CITY OF NEW YORK, Plaintiff, *v.* CLARENCE M. ERNST, Defendant.

Supreme Court, Special Term, Queens County, October 22, 1951.

912

*Denis M. Hurley, Corporation Counsel* (*Bernard J. Levy* of counsel), for plaintiff.

*Joseph B. Cavellero* for defendant.

HALLINAN, J. This is a motion by the City of New York for leave to renew, on an additional affidavit, its application for an order striking out the answer interposed by the defendant, Clarence M. Ernst, and, thereupon, to reconsider its application for judgment as originally prayed for. The motion for leave to renew is granted, and upon reconsideration of the entire matter, the following disposition is made:

The city commenced an action " *In Rem* " pursuant to title D of chapter 17 of the Administrative Code of the City of New York, to foreclose certain tax liens. Among the parcels contained in the " List of Delinquent Taxes " were seven lots on which taxes had accrued and remained unpaid since the first half of the fiscal year 1941.

The defendant Clarence M. Ernst appeared by attorneys and interposed an answer wherein he alleged that on or about August 30, 1948, he purchased from the city seven transfers of tax liens affecting the seven tax lots sought to be foreclosed. He alleged further that these transfers of tax liens represented a substantial investment and were subject and subordinate only to the tax liens of the city here sought to be foreclosed; that unless the premises affected were sold at public auction he would suffer irreparable loss, and the city would be unjustly enriched by the acquisition of the title to the fee in the premises free and clear of such tax liens. The answer did not raise any issue with respect to the validity of the liens sought to be foreclosed, nor was it contended that the city had failed to comply with all the procedural requirements (Administrative Code, ch. 17, tit. D). The prayer for relief was simply to adjudicate and determine that the defendant's transfers of tax liens were valid and subsisting liens upon the respective parcels therein described for the respective amounts thereof with interest, and subject and subordinate only to the tax liens

sought to be foreclosed by the city, and were prior in lien to all other rights, claims, liens or incumbrances whatsoever affecting said parcels, and directing that the premises be sold at public auction under the direction of the court with notice to the defendant of the time and place of said sale and of any proceeding to obtain surplus moneys arising therefrom.

It is clear from a reading of the pleadings and affidavits submitted by the defendant that there is no controverted issue of fact presented herein. The sole question here is whether the defendant, a holder of subordinate transfers of tax liens, is entitled, under the statute, to a direction in the judgment to be entered herein that there be a separate sale at public auction of the seven lots in which he has an interest. Subdivision a of section D17–12.0 of the Administrative Code, the only portion of the statute under consideration which refers to a sale at public auction, vests the court with full power to determine and enforce in all respects the priorities, rights, claims and demands of the several parties including " the priorities, rights, claims and demands of the defendants as between themselves, and *in a proper case* to direct a sale of such lands and the distribution or other disposition of the proceeds of the sale." (Italics supplied.)

The city contends that the mere allegation of the holder of a junior lien that a sale of the tax lot would create a surplus sufficient to liquidate the junior lien, does not warrant a finding under the foregoing statute that " a proper case " exists for the direction of a separate sale at public auction.

No prior adjudication with reference to this statute has been brought to the court's attention nor found upon an independent investigation. It would appear that the city's in rem tax foreclosure statute was patterned largely after article VII-A of the Tax Law, which is the in rem tax lien foreclosure statute governing the rest of the State. In *Village of Mamaroneck* v. *Miller* (273 App. Div. 777), which involved an in rem foreclosure under the State Tax Law, the owner of a tax lot interposed an answer which raised no issue with respect to the validity of the lien sought to be foreclosed; it neither alleged that the taxes had been paid nor that the property was not subject to tax, nor did it allege any jurisdictional defect or invalidity in the tax or in the sale. In affirming an order striking out the answer as sham and frivolous, decreeing the same to be a nullity and directing judgment dispensing with the sale and for conveyance, the Appellate Division, Second Department, observed that a " bare allegation of ownership

and demand for severance does not constitute an answer within the purview of the act."

In evaluating the foregoing ruling, it is significant to observe that the act which governed the foreclosure in that case included subdivision (2) of section 165-h of the Tax Law, which apparently permitted the court to make a final judgment directing the sale of a parcel as to which an answer had been interposed by a party other than a tax district, and where the court had determined that such party had any right, title, interest, claim, lien or equity of redemption in such parcel. Yet the court held: *" A bare allegation of ownership and demand for severance does not constitute an answer within the purview of the act."* (Italics supplied.)

In view of the holding in the cited case, and in light of the omission from the city's in rem statute of subdivision (2) of section 165-h of the Tax Law, it is difficult to perceive how " a proper case to direct a sale " is made out by an answer such as has been here interposed by the defendant. " It is the policy of the law to insure the collection of all taxes, and whenever it is possible on any theory to do so the courts will construe the statutes to accomplish that result." (*Nassau Co.* v. *Lincer,* 254 App. Div. 746, affd. 280 N. Y. 662; 3 Sutherland on Statutory Construction [3d ed.], § 6706, p. 302.) The purpose of any statutory process for the collection of taxes is to compel their payment when they are long overdue, and in default of such payment, to transfer title to the tax-burdened real estate from the owner thereof without his consent. Summary remedies for the collection by the Government of its revenues have been allowed as a matter of State necessity. (3 Cooley on Taxation, § 1326, p. 2614.)

It is clear from a reading of the city's in rem statute that it was the intent of the Legislature to provide the city with a method of foreclosing tax liens which is simple in form and procedure, expeditious in operation, inexpensive in cost and summary in nature, and that only in limited circumstances could " a proper case to direct a sale " be made out. In view of the holding in *Village of Mamaroneck* v. *Miller (supra)* and the entire scheme of the city's in rem statute, it can hardly be said that " a proper case " for a sale is made out by an answer such as that of the defendant, which raised no issue as to the validity of the city's liens, but which merely seeks to create a surplus sufficient to liquidate the defendant's junior lien.

The answer of the defendant Ernst is, therefore, struck out and the city's application granted as prayed for.

Proceed on notice.